IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID N. VOLKMANN,

                         Plaintiff,

          v.

WISCONSIN LABORERS' HEALTH FUND,

                     Defendant.

OPINION AND ORDER

08-cv-325-slc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID N. VOLKMANN,

                       Plaintiff,

          v.

WISCONSIN LABORERS' PENSION FUND,

                     Defendant.

08-cv-326-slc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

These are two civil suits growing out of decisions by union health and pension funds to terminate plaintiff David N. Volkmann's participation in the funds retroactively and to return to his alleged employers the contributions they made on his behalf, less administrative costs.   Plaintiff brought these two suits in the Small Claims Court for Burnett County,

1

Wisconsin, alleging in the first case that defendant Wisconsin Laborers' *Health* Fund owed him $1,166.00 in administrative costs and in the second case, that defendant Wisconsin Laborers' *Pension* Fund owed him $5,000: $1,166.00 for administrative costs and $3,834.00 for the value of the pension benefits he would not receive.  In addition, plaintiff asked defendants either to return to him the contributions made on his behalf to both funds or pay them out to him in benefits.  Alternatively, he asked the court to order defendants to accept the contributions and give him his pension and benefits under COBRA, plus court costs and interest.

Plaintiff is proceeding pro se.  He contends that he was a bona fide participant in the defendant funds from February 2000 until January 2004 and that defendants acted improperly in finding that he was not an "employee" in "covered employment" entitled to participate in the funds.  He takes issue with defendants' decision that he was not a covered employee of either corporation but rather an owner of the corporations or a "substantial officer" and therefore ineligible for coverage under either fund.

Alleging federal question jurisdiction under 28 U.S.C. § 1331 and the Employee Retirement Income Security Act, 29 U.S.C. § 1132, defendants removed both cases to federal court, where they were assigned to United States Magistrate Judge Stephen Crocker while this district has a judicial vacancy.  The parties have not yet stipulated to Magistrate Judge Crocker's presiding over the cases.  In the interim, I will decide the motions for

2

summary judgment that are before the court.  Although plaintiff's claims against the two defendants are not identical and the rules promulgated by the two are slightly different, the parties have treated the two cases as one and I will follow their example.

I conclude that plaintiff cannot maintain a suit against either defendant for return of his contributions.  The only entities that would be entitled to a refund of contributions from this fund are the corporations who made the contributions on plaintiff's behalf, and they are not parties to this case.  To the extent that plaintiff contends he is entitled to COBRA benefits and to retroactive pension credit in his own right, he would have to show both that he filed timely appeals from defendants' decisions to deny him benefits and that defendants acted arbitrarily and capriciously when they found him ineligible for benefits under either plan from the period starting February 2000 and running through June of 2003.  I conclude that he cannot make that showing.

For the sole purpose of deciding the motions, I find from the parties' proposed facts that the following facts are both undisputed and material.

UNDISPUTED FACTS

Both defendants Wisconsin Laborers' Health Fund and Wisconsin Laborers' Pension Fund are employer-funded plans governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.  Each defendant has its own board of trustees, consisting of an

3

equal number of union members and employers.

Both funds have plan documents that are available to participants upon request. Defendant Health Fund's plan document defines "employee" as any employee represented by the Union and working for an Employer as defined herein." Plan Doc. § 13.  It defines "covered work" as work performed by an employee for an employer under a written agreement requiring contributions to the fund for such work.  § 2.7.  Under § 3.1, the plan provides that, as a general rule, employees will become eligible for benefits if they perform covered work and sufficient contributions are made to the fund consistent with the plan document.  An employee must have worked 600 hours in covered employment during a 12 consecutive month period.  § 3.2.

Under § 3.23, employers may cover their non-bargaining unit employees only if they signed both a collective bargaining agreement and a participation agreement and all of their office staff and other non-bargaining unit employees who work a minimum of 25 hours a week are covered through the Health Fund.

Section § 4.17 of the plan document gives the trustees discretion to amend and interpret the plan document, without notice, so long as the amendment is on a non-discriminatory basis.  Section 4.13 gives persons dissatisfied with a decision of the Board of Trustees 60 days in which to appeal a decision if they have received a Notice of Denial of a Claim and 90 days if they did not receive such a notice.

4

The Pension Fund's plan document defines "covered employment" as "Employment of an Employee by an Employer for work under a written agreement requiring contributions to the Fund including such employment prior to the Contribution Period which would have resulted in contributions had the Fund been in existence." § 1.10.

Section 2.2(b) of the plan allows an employee to become a participant only if he performed at least 750 hours or work in covered employment during a consecutive 12-month period.  To qualify for a reciprocal pension, a participant must have at least one year of pension credit based on actual employment under the plan.  An employee cannot be eligible for a reciprocal pension if he never worked in covered employment.  § 4.03.

Like the Health Fund, the Pension Fund's plan provides that the trustees shall be the sole judges of the application and interpretation of the plan, § 6.03; decisions of the trustees shall be final and binding on all parties, id.; and no lawsuit may be filed against the trustees or the fund until the matter has been submitted for review under the ERISA-mandated review procedure set forth in § 6.04 of the plan.  Id.  To appeal a denied claim, the claimant must file an appeal in writing within 60 days of receipt of notice of the benefit denial.  § 6.04.

All employees on whose behalf either plan is receiving contributions receive a copy of the Summary Plan Document.  Among other topics that the summary covers are the qualifications for becoming a participant in the fund and the time for appeal of any adverse decision.

The boards of both defendants drafted a handbook for distribution to employers when they begin to make contributions to the funds.  The handbook explains that an employee is covered by a collective bargaining agreement only if he is subject to the salary or wage rate, fringe benefit and grievance procedures of the collective bargaining agreement and it provides that "[t]he employee cannot be a substantial officer (for example, president, vice president, secretary or treasurer) or owner of the Employer company."  Franken Aff., dkt. #21, Exh. 5, Handbook, at 3.

In February 2000, a company named KATS Corporation began making contributions on plaintiff's behalf to defendant Pension and Health Funds. Before then, plaintiff had not been recognized as a participant in the pension fund.  KATS made contributions to the Health Fund on plaintiff's behalf although it never signed a participation agreement with the Health Fund.  Each month between February 2000 and June 2003, KATS sent checks, drawn on its accounts, to the two funds as contributions on plaintiff's behalf.

In March 2000, plaintiff asked defendants to transfer contributions made on his behalf to the Minnesota Laborers' Health and Pension Funds.  Defendants honored this request and thereafter forwarded contributions received from KATS to the Minnesota funds.  When defendants received contributions from KATS, they did not know that plaintiff was an owner of KATS, was married to the owner of KATS or that he was a director, secretary and treasurer of KATS.

6

From 1996-2001, plaintiff's wife Linda held 51% of the KATS stock and was president and vice president of the corporation. Plaintiff was treasurer and secretary. In an annual meeting held on January 1, 2002, plaintiff transferred his remaining 49% of KATS stock to Linda. He retained his title as a director of KATS, but relinquished his offices as secretary and treasurer to his wife. Linda conveyed all of the KATS stock back to plaintiff at an annual meeting held on November 2, 2003, about the time that their divorce proceedings were completed. (The record does not disclose what KATS did after November 2, 2003.)

Between July 2003 and January 2004, a new company named KADS Investment Corporation made contributions to the defendant funds on plaintiff's behalf, with checks drawn on its own account, although it never signed a participation agreement with the Health Fund in place of KATS. When defendants accepted contributions from KADS, they did not know that plaintiff was the corporation's owner. Each month, defendants forwarded the contributions to the Minnesota Laborers' Health and Pension Funds.

In March 2004, defendants discovered that plaintiff was the president and sole employee of KADS. On March 12, 2004, they wrote to advise him that they would decline to accept future contributions made by KADS on his behalf. Later, the Minnesota Laborers' Health and Pension Funds decided that plaintiff was not a covered employee at any time between February 2000 and January 2004 and returned to defendants all the contributions

7

made by KATS Corp. and KADS, less the money the Health Fund had paid to cover health claims made by plaintiff between February 2000 and January 2004.

Upon receipt of the returned contributions from Minnesota, defendants considered whether to provide retroactive coverage to plaintiff.  Ultimately, their boards determined that he had not been eligible for coverage for the period February 2000 to January 2004 because he never performed covered work during that time, but was instead sole owner of KADS and married to the owner of KATS during the entire time that KATS had made contributions to defendants.

On January 6, 2005, defendants' administrative manager, Richard Franken, wrote plaintiff on defendants' behalf, denying him health and pension coverage and advising him that defendants would be issuing checks refunding $30,855.12 to KATS Corp. and $9,322.40 to KADS Investment Corp., representing the full amounts that defendants had received from the Minnesota Laborers' Health and Pension Funds, minus $1,792.00 for legal costs and $540.00 for administrative costs.   Franken closed the letter by saying, "I believe this now completely resolves the matter."  KATS Corp. and KADS cashed the checks.  Plaintiff never wrote or called either defendant to complain that the checks were not made out to him personally.

Shortly after receiving the January 6, 2005 letter from Franken, plaintiff consulted the Upper Midwest Pension Rights Project.  On May 8, 2006, project lawyer Mary Browning

8

filed what she called a claim with defendant Pension Fund on plaintiff's behalf, seeking pension credit only.  Dkt. #12-4 at 3.  She did not complain about defendant Pension Fund's decision to return contributions made by KADS or defendant Health Fund's January 6, 2005 decision to return contributions to KATS, Corp. and KADS.  Rather, she argued that KATS Corp. had signed a contract with defendant Pension Fund to become a contributing employer and that plaintiff was an employee of KATS, performing laborer activities; that defendant had never given a detailed reason for returning the contributions, in violation of § 503 of ERISA and Department of Labor regulation 2560.503(g)(ii); that defendant had acted arbitrarily and capriciously in finding that plaintiff had not performed laborers' work while employed by KATS; and that defendant cannot deny plaintiff participation on the ground that he is an owner "absent clear and unambiguous language in the Plan Document."  Id. at 9.  In addition, she alleged that defendant Pension Fund had relied improperly on the Minnesota funds' determination of plaintiff's status.  In the letter, Browning referred to the summary plan document for the Pension Fund and attached a copy of the document to her submission.

The board of trustees of defendant Pension Fund reviewed plaintiff's claim, chose to treat it as an appeal and denied it on the ground that plaintiff was either an owner or not engaged in covered employment or both during the time that KATS Corp. and KADS made their contributions on his behalf.

Both KATS Corp. and KADS were properly incorporated when they sent contributions

9

to defendants on plaintiff's behalf.  Plaintiff never sent any contributions to either defendant in his individual capacity.

OPINION

A few threshold issues must be addressed before turning to the merits of plaintiffs' complaints.  First, on August 15, 2008, plaintiff moved to amend request for relief in the complaint in each case, dkt. #8, to ask that defendants be directed to accept the $24,325.20 contribution to the pension fund that they had returned to him (presumably the contributions that defendants received from the Minnesota funds and returned to KATS Corp. and KADS) and reinforce the reciprocity agreement with Minnesota or alternatively, invest the money in the Wisconsin pension with vested rights.  In addition, plaintiff asked for return of all money paid into various funds such as "skill, dues, lect, Ca and Drg Prg," plus a refund of his union dues, filing fees of $170.00 and a service fee of $96.00.  The magistrate judge construed this motion to amend as an addendum to the complaint and gave defendants an opportunity to respond.  These new claims for relief will be addressed in this order.

Second, the magistrate judge denied plaintiff's motion for summary judgment, dkt. #23, both because it was untimely and because it appeared to contain plaintiff's arguments in opposition to defendants' motion.  Dkt. #29.  He ordered that it be treated as a response to defendants' motion for summary judgment.

10

Third, plaintiffs filed an objection to defendants' reply brief, dkt. #30, and their appended documents, dkt. #31, contending that the materials were untimely because they were filed more than ten calendar days after defendants had received plaintiff's response brief. Plaintiff pointed out that the magistrate judge's pretrial order required the parties to file reply briefs no later than 10 calendar days after their receipt of a response brief. He added that the materials raised new matters to which he had no chance to respond.

Plaintiff read the pretrial order correctly. Had plaintiff taken the full 30 days he was allotted in which to file his response brief, defendants' reply brief would have been timely. Because he filed his brief early, on November 26, 2008, defendants' brief was due December 6, 12 days before defendants filed it. Accordingly, I will disregard the reply brief as untimely. As for the documents that accompanied it, I will consider the two portions of the plan documents that defendants failed to include when they submitted their brief in support of their motion for summary judgment, but will not give any attention to the other documents.

I turn then to the merits of plaintiff's cases. Defendants raise a plethora of reasons why plaintiff's suits must fail. One is that plaintiff has no standing to sue for the return of contributions that were made by KATS Corp. and KADS. Defendants are correct. Plaintiff cannot sue for the return of money he did not pay. Only the corporations can do so but they are not parties to these suits. It is true that in his original complaint in small claims court, plaintiffs said that the "plaintiffs are also two subchapter S corporations that I now own

11

100%," dkt. #1-3 at 3, but the two corporations never made an appearance either in small claims court or in this court.  As corporations, they can appear in federal court only if they are represented by a lawyer.  United States v. Hagerman, 545 F.3d 579, 581-582 (7th Cir. 2008) ("the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity").

Plaintiff's only claim against defendant Health Fund is for the right to obtain continuing health insurance coverage under COBRA.  He does not contend that he incurred any illnesses or injuries that were not covered by the fund during the time he thought he was covered.  As to defendant Pension Fund, although plaintiff cannot claim any right to a return of funds, he is seeking retroactive pension credit for the period in which the corporations made contributions to the fund.  He has standing to pursue that form of relief.  McCarter v. Retirement Plan for Dist. Managers of American Family Ins. Group, 540 F.3d 649, 650 (7th Cir. 2008) (if asserted injury can be traced to plan's terms and can be redressed by judgment in plaintiff's favor, "[n]o more is required for standing").

Whether plaintiff can prevail on his claims is a different matter.  Both defendants contend that he is barred from suing them because he has not exhausted his appeal rights under either plan.  Both plans prohibit the filing of a lawsuit against the trustees or defendant

12

fund until the matter has been submitted for review under the ERISA-mandated review procedures.  Both plans give claimants the right to appeal any decision within 60 days once they have been provided adequate notice in writing setting forth the specific reasons for the decision.

Defendants are correct in saying that plaintiff has not shown that he filed a timely appeal of either defendant's denial of his request.  The undisputed facts are that on January 6, 2005, plaintiff received a letter from defendants, denying him coverage and enclosing checks refunding more than $40,000 in contributions that defendants had received from the Minnesota funds.  He did not file any appeal from the denial of coverage, but on May 8, 2006, more than a year after he learned he had been denied coverage, Mary Browning of the Upper Midwest Pension Rights Project, wrote to defendant Pension Fund "to file a claim on behalf of [plaintiff]."  This letter came too late for the 60-day appeal period.

This would seem to doom plaintiff's case.  Certainly, his failure to appeal to defendant Health Plan dooms any effort he could make to claim entitlement to any health plan benefit. As to the pension plan, however,  he may have found a loophole.  He maintains that he was never advised of the 60-day deadline, despite his attempts to obtain copies of the relevant documents.  His assertion is supported by a letter from defendants' counsel, dated March 8, 2005, in which counsel denied plaintiff's request for these documents and others on the ground that plaintiff was not a participant in either fund and was therefore not entitled to

13

the documents he sought.  (Defendants never explain why they took this position or why they never advised plaintiff of the possibility that he could appeal the decision.)

Defendants make a weak  attempt to refute plaintiff's assertion that he never had the plan documents. They rely on one fact only:  the Upper Midwest Pension Rights Project submitted a copy of the summary plan document with the claim it filed on plaintiff's behalf. Defendants ask the court to infer from this that plaintiff furnished the document to the project.  The inference is not inevitable.  I can think of several possible ways in which the project might have obtained the summary plan document, only one of which is that plaintiff produced it.  Moreover, defendants have not explained how, when their counsel took the position in his April 1, 2005 letters that because plaintiff was never an eligible participant in the plans, he was not entitled to any plan documents, dkt. #26-2, exhs. E and F, they can argue now that plaintiff must have had such documents.

Although plaintiff did not file a timely appeal, defendant Pension Fund's board of trustees considered the claim filed on his behalf by the Upper Midwest Pension Rights Project as such an appeal.   In a letter dated December 6, 2006, dkt. #21-5, 13-15, addressed to Browning at the Pension Rights Project, the fund's counsel explained the trustees' analysis of plaintiff's situation, as follows.  The fund's audit of KATS Corp. showed that plaintiff was not on the payroll for the period January 1, 2000 through June 30, 2002.  This made him ineligible to participate in the fund, whose rules require a participant to be an employee in

14

covered employment, that is, a person on the payroll.  The fund said that it did not have information about plaintiff's status for the period July 2002 through December 2002, but it had no reason to believe that he was placed on the payroll for that six-month period so as to make him eligible for coverage.  As to the period starting in January 2003, the fund believed that plaintiff had become the 100% owner of KATS Corp. and had changed the name of the entity to KADS.  It added that its audit of KADS for the period July 1, 2003 through December 31, 2003 showed that for this period, plaintiff's title at KADS was president. Under the fund's rules, the fund did not cover "substantial officers," which include president, vice president, secretary and treasurer.

Plaintiff has not shown any reason why I should not evaluate the trustees' explanation under the arbitrary and capricious standard.  It is generally understood that courts are to apply this deferential standard when the language of an ERISA plan grants the trustees discretion to decide benefit plans or to interpret the plan.  Bruch v. Firestone Tire & Rubber Co., 489 U.S. 101, 111 (1989) (court is to apply de novo standard of review to denial of benefits challenged under § 1132(a)(1)(B) "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); see also Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000) (ERISA plan is to be given de novo review unless plan's terms make clear that plan administrator has discretion to decide whether applicant for benefits is entitled to them).

15

Neither side argues that <u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343 (2008), requires the court to consider the possible conflict of interest arising from the dual role of an entity as an ERISA plan administrator and a payer of plan as a factor in determining whether defendant Pension Fund abused its discretion in denying benefits.

The language of the plan document at issue in this case makes it clear to participants and any other reader that the trustees have the sole discretion to interpret and apply the Pension Fund's governing documents, that their decisions are final and binding on all parties, § 6.03; and that they have the sole discretion to amend and interpret the plan document, without notice, so long as the amendment is on a non-discriminatory basis. § 4.17. I conclude that the proper standard is the deferential one: was defendant Pension Fund's decision arbitrary and capricious?

Defendant Pension Fund's task was to determine whether plaintiff had been eligible for pension benefits from January 2000 through July 2003, the period of time for which he contends that he was a covered employee working for KATS Corp. (Plaintiff does not contest the trustees' determination as it relates to KADS or as to any contributions made by KATS Corp. after July 2003. Letter from Browning, dkt. #21-4, at 3 ("The contributions in question are those covering January 2000 through June of 2003.")) The Pension Fund explained to Browning in a December 6, 2006 letter from counsel, dkt. #21-4, that its audit of KATS Corp. for the period January 2000 through June 30, 2002 showed that plaintiff had

16

not been on the company's payroll for that period.  The Fund took the position that plaintiff was ineligible to participate in the fund from July 2003 through January 2004, because he was the president of KADS, his purported employer, and, as explained in the Employer Handbook, owners are ineligible for participation in the health and pension funds.  This left the period from July 1, 2002 through June 30, 2003.  As to the first half of this period, from July 1, 2002 through December 30, 2002, defendant said it had "no reason to believe that [plaintiff's] status [at KATS Corp.] changed for the last six months of 2002."  Id. at 2.  As for the second half of the period, the first six months of 2003, defendant thought that plaintiff had become a 100% owner of KATS Corp. in early 2003 and changed the company's name to KADS, making him an owner of the new company and thus, ineligible to participate in the fund for the entire period of time because of his ownership status.

The facts on which defendant relied for its decision do not jibe with the undisputed facts in the present record, which show that plaintiff did not resume his ownership of KATS Corp. until the fall of 2003.  This discrepancy does not mean that the Pension Fund's decision is arbitrary or capricious.  To make that showing, plaintiff would have to show both that the assumptions on which defendant proceeded were "unreasonable and not merely incorrect."  Herzberger, 205 F.3d 327, 330 (7th Cir. 2000).

For the period from January 2000 through December 30, 2002, plaintiff has adduced no evidence to show that defendant Pension Fund was wrong in finding that he was not on

17

the payroll of KATS Corp.  Without such a showing, he cannot challenge defendant's decision to deny him benefits on the ground that he was not a covered employee eligible to participate in the funds for that period of time.  It is evident from his letters to defendant Pension Fund and his statements in this lawsuit that he believes he should have been considered a covered employee because he performed all the laborers' work for his wife's operations under KATS Corp.  This may very well be true, but he has not submitted any payroll records in evidence to show that he was treated as an employee and met all the qualifications for participation.

As for the period from January 1, 2003 through June 30, 2003, defendant concluded that plaintiff was an owner of the employing corporation and ineligible on this ground for participation in the fund.  It may have been incorrect about plaintiff's status during this time but I cannot say that its conclusion was unreasonable when plaintiff has not shown that he gave the Pension Fund any evidence to confirm the status of his ownership interests in either KATS Corp. or KADS for the time in question.  Browning argued in the "claim" she filed with defendant Pension Fund  that the Minnesota funds had erred in finding that plaintiff had established a new entity in February 2002 known as KADS Investment Corp.  She asserted that from 2000 to 2003, plaintiff was working for KATS Corp. and not KADS and did not revive his ownership interests in KADS until July 2003, but her assertion does not constitute proof.  Moreover, if, as Browning asserted and plaintiff maintains, he did not have

18

an ownership interest in KADS and remained an employee of KATS until July 2003, he still has no evidence that he was on KATS's payroll during that time so as to be eligible for participation.  In light of plaintiff's failure to produce any evidence to show that he was on the KATS Corp. payroll or otherwise eligible for participation in the fund between January 1, 2000 and July 1, 2003, I conclude that it was neither arbitrary nor capricious for defendant Pension Fund to take the position that he was never eligible for participation in the fund.

Therefore, I find that defendants are entitled to summary judgment in their favor on plaintiff's claims that they acted illegally in denying him participation in the Health and Pension Funds for the period January 1, 2000 to July 2003.  In addition, I find that plaintiff is not eligible for the return of any funds contributed on his behalf to any funds for such things as "skill, dues, lect, Ca and Drg Prg," or for a refund of his union dues, filing fees of $170.00 or service fee of $96.00.  Plaintiff has not alleged anything in his complaint or produced any evidence to show that he has a valid claim to the return of these dues.  More to the point, he has not shown that either defendant is the entity to which he paid the dues. As for the fees, such costs might be awarded to him had he prevailed in this suit, but because he has not, he cannot collect his filing and service fees or any other costs.

Because I have found that defendants prevail on the merits, it is not necessary to reach their argument that when plaintiff cashed the refund checks sent to KATS Corp. and KAD Investment Corp., he accepted the decision of the funds to deduct legal and administrative

19

expenses from the checks, as well as defendants' assertion that the reimbursements resolved the entire matter. As I have held, the corporations cannot litigate any disputes between them and defendants in this case because they are nor represented by counsel. Therefore, whether the cashing of their checks constitutes an accord and satisfaction is immaterial. The only question that had to be decided was whether plaintiff had any residual claims against defendants.

One last loose thread remains: plaintiff's request for an order requiring defendants to enforce the reciprocity agreement with the Minnesota funds. As defendants point out, they have no authority to require the Minnesota funds to take any action. If plaintiff believes he has grounds to require those funds to do anything on his behalf, he should seek relief directly from them.


ORDER

IT IS ORDERED that

The motions for summary judgment filed by defendants Wisconsin Laborers' Health Fund and Wisconsin Laborers' Pension Fund are GRANTED. The clerk of court is directed

20

to enter judgment for defendants and close these cases.

Entered this 16th day of March, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

21